## Lemaster, et al. v. Pelfrey, et al.

(Decided January 14, 1927.)

### Appeal from Johnson Circuit Court.

1. Quieting Title—Burden is on Plaintiff to Show Destruction of Record and Establish His Claim of Title, But Defendant Must Establish Title Claimed by Him.—In proceedings to establish title, burden is on plaintiff to show destruction of record and establish his own claim of title, but burden is on defendant claiming adversely to establish title claimed by him.

2. Quieting Title—Plaintiff Establishing Prima Facie Valid Title is Entitled to Decree, Unless Defendant Shows Better One.—Plaintiff, establishing prima facie valid title, from whatever source, by allegations and proof, is entitled to decree, unless defendant shows a better title.

3. Quieting Title—Evidence Held to Support Chancellor's Finding for Plaintiffs, in Suit to Quiet Title to Minerals and Oil Rights,—In action to recover possession of and quiet title to minerals and oil rights in certain tract, evidence held to support chancellor's finding for plaintiffs.

WHEELER & WHEELER and JOHN F. HAGER for appellants.

BEN H. VAUGHAN for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Affirming.

The appellee, Pelfrey, suing for himself and the other heirs of Stephen Pelfrey, hereinafter referred to as the plaintiffs, began this action to recover possession of

and quiet their title to the minerals and oil rights under and appurtenant to a certain tract of 75 acres of land. They were successful and the defendants have appealed. No brief was filed on behalf of the plaintiffs, and the defendants in their brief have totally disregarded these requirements of subsection 2 of rule 5 of this court:

"The page or pages of the brief on which each separate question is discussed must be indicated in the classification.

"In the argument of facts in the body of the brief shall be cited the page or pages of the bill of evidence on which may be found the supporting testimony."

By failure of the plaintiffs to brief at all and by the manner in which the defendants have briefed this case, an unusual and an unnecessary amount of labor has been imposed upon this court in order to arrive at the facts. They seem to be these:

About the year 1877, Stephen Pelfrey conveyed to Enoch Fairchild two tracts of land, one of eight acres and one of seventy-five acres. We do not know just when the eight acre tract was conveyed, but the record shows that the seventy-five acres were conveyed by a deed which was placed of record in deed book P at page 599. In 1883, by a deed which was placed of record in deed book R at page 494, these two tracts were conveyed to Thomas J. Curtis. Curtis owned this land for several years, and after his death, it passed to his heirs. Some conveyances were made from some of these heirs to the others, and on August 3, 1905, the heirs of Thomas J. Curtis who then owned the property, conveyed these two tracts of land to the defendant, W. J. Lemaster, by deed of record in deed book 26, page 100. On July 2, 1919, Lemaster gave an oil and gas lease on this property to the defendant, Ralph Stafford, recorded in lease book 10, page 294. On July 15, 1920, for a consideration of $5,000.00, Ralph Stafford assigned this lease to the defendants, C. J. McClelland, Everett Hitchcock and Ada Prindable, reserving and retaining, however, a 1/16 royalty interest therein, and that assignment was placed of record. These parties have since drilled two wells on the property at a cost of more than $8,000.00, one of the wells having been drilled and completed before this suit was begun. It is the conten-

tion of the plaintiffs that at the time their ancestor Stephen Pelfrey conveyed these two tracts of land, he excepted from the conveyance every species of minerals and oil rights and mining privileges under the seventy-five acre tract. From the evidence of the clerk it appears that such was the custom of the elder Pelfrey, when he sold property. It would seem that it would be an easy matter to determine who owns these mineral and oil rights by merely referring to the records, but these records are not intact. It appears from the evidence that the habendum clause in the deed from the elder Pelfrey to Fairchild was about like this:

> "To have and to hold the same and singular the appurtenances thereunto belonging or in any way appertaining to the *party of* the second part, his heirs and assigns forever, *except, however, all and every species of minerals and oil rights and mining privileges and right of way for the mining and conveying same over the land which is hereby conveyed.*"

Some one has mutilated the record by tearing out about 30% of page 599, thus deleting the words we have italicized in the habendum clause above. In like manner, some one has mutilated the record in deed book R at page 494, by erasing some matter therefrom, there being no evidence to show what was erased. In deed book 26, page 100, there has been another mutilation. Part of this is an erasure and a part of this mutiliation was accomplished by tearing the record. The clerk testified that about one inch of the record was torn off and about two inches of the printed matter had been erased, and we have no means of knowing what was erased or what had been written upon the paper torn off. Our knowledge of the habendum clause in deed book P, at page 599, is obtained from a certified copy of what remains of that deed after the mutilation, and from a copy of this habendum clause made by a man who says he was contemplating making a contract with Mrs. Prindable and Messrs. McClelland and Hitchcock to take some stock in the company and to drill some wells on this property. He testified that he had obtained information that there was some question about the title to the oil and gas, and on account of that, he went to Paintsville, examined the records and made a pencil copy of the deed, which he filed as a part of his evidence and we have copied above from

his evidence, that part of which is of interest to us. The
following is taken from the deposition of Enoch Fair-
child:

"State your name and place of residence? I
am 71 and live at West Liberty, Ky., Morgan county.

"Are you acquainted with the property in con-
troversy in this action? Yes, sir.

"Did you once own it? Yes, sir.

"Of whom did you get it? Stephen Pelfrey.

"Do you remember the date when you got it
from him? No, sir.

"Did you own the fee simple or only the sur-
face? I just owned the surface and the mineral on
the eight acres.

"Of whom did you get this eight acres? I got
it from Stephen Pelfrey.

"Who did you let have this land? I sold the
whole thing to Tom Curtis.

"Did you sell him the fee simple or only the sur-
face? I just sold him the surface. I reserved the
mineral rights on the whole thing. I reserved the
oil and gas in the whole land.

"Did you have the reservations in the deed
which you made to Curtis? Yes, sir.

"Was there a reservation in the deed which
Stephen Pelfrey made to you for this land? Yes,
sir. He reserved the oil and mineral rights and he
had the reservation written in the deed.

"Did you have your deed recorded? Yes, sir."

Amos Howard testified that he was in the clerk's
office and was looking at some records in which he was
interested, and that Mr. Enoch Fairchild asked him to
look at some records for him; that he looked at the
record of the deed from Stephen Pelfrey to Fairchild;
that the deed was not torn the first time he saw it, and
that there was a reservation of the oil and gas; that the
next time he saw this deed, a part of the leaf had been
torn off. Howard was unable to give the exact words, but
said the substance of them was that the oil and gas were
reserved.

The witness James Gullett said he was present at the
time the trade was made by which Stephen Pelfrey sold
this land to Fairchild, and he says, "The oil and minerals
was excepted out of the trade." He further testified to

a conversation with the defendant Lemaster, relative to a lease given by Lemaster, and this is taken from his testimony:

> "Now, what did W. J. Lemaster say at that time about this mineral or oil and gas? As I remember now, we were talking about the lease and he mentioned in that conversation that he knew all about it. He took it at his own risk. That he took the lease at his own risk; and he knew all about it."

Willie Barker testified that he had the original deed from Fairchild to Curtis, and used it in running some lines, and that that deed contained a reservation of the oil and minerals.

Kendrick Blanton testified to having seen the deed from Curtis to Lemaster, and that it contained an exception of the minerals, oil and gas.

The defendants Stafford, Lemaster, Hitchcock and McClelland testified that they had carefully examined these records before they were torn and mutilated, and that they contained no reservation whatever. They are supported in that by the testimony of an attorney, who made for them an examination of this title, and gave a written opinion upon it. That opinion is before us, and in it is contained this statement: "There are no liens or adverse claims of record against this land, and the title therefore is good." This witness was asked this question: "Are you positive that there was no reservation at the bottom?" (Referring to the bottom of the Pelfrey deed.) His answer was, "None that I discovered. I do not think there was any."

There is nothing in the record to show whether or not these original deeds have been withdrawn from the clerk's office, except the statement of Barker that he used one in running a line, and the testimony of Lemaster that he had the deed that was made to him by the Curtis heirs, which he promised to file, but failed to do. He also said he was willing to file a certified copy of the deed from Pelfrey to Fairchild, and from Fairchild to Curtis, as a part of his deposition, but he did not do that. It is admitted that the minerals, oil, etc., under the eight acre tract had been reserved. Lemaster knew that, yet he leased that tract together with the seventy-five acre tract to Stafford, and it was of this lease that the attorney who examined it said that the title was good. The

failure of this attorney and his clients to discover the reservation affecting the eight acres, indicates that their examination was directed rather to liens than to reservations.

The condition of this record is such that it practically amounts to being no record, and all these parties are in the position of trying to establish a lost record and thus establish their title.

"In proceedings to establish title the burden is upon the plaintiff to show the destruction of the record, and to establish his own claim of title; but he is only required to show the validity of his own title, and the burden is upon any defendant claiming adversely to establish the title claimed by him. So if plaintiff by his allegations and proof establishes a *prima facie* valid title from whatever source he is entitled to a decree unless defendant shows a better one." 34 Cyc. 613.

The chancellor found for the plaintiffs. The record supports his finding.

Judgment is affirmed.